And, again, Mr. Thomas. Am I correct that the sole remaining issue is whether a new trial is warranted because the district court allowed Google over Contents Guard's objection to mount an improper Practicing the Prior Art Prosecution Disclaimer defense? The usage rights issue is the same in both appeals, Your Honor, yes. So that's the sole issue? That's the difference between the two, yes, Your Honor. And if there's no other questions on usage rights, I'm happy to address just the Practicing the Prior Art defense. I would like the opportunity to address some of the usage rights issues, but I will move on to the Practicing the Prior Art error in the evidentiary submissions in this trial. Because that started with Google's opening, where they identified what they called this Prior Art Griswold License Server approach, and they told the jury that the case was going to come down to whether or not their system was more like the Griswold Prior Art License Server system or more like the Stefik invention. I may be— Because it's very clear that there is no Practicing the Prior Art defense to literal infringement. The parties, as a result, are prohibited from arguing that a plaintiff must prove the accused devices embody all the limitations in the asserted claims, and in addition, that the accused devices must not be an adoption of the combined teachings of the Prior Art. Where did Google argue that content guard must make such an additional showing, additional showing? I don't think I'm following your question, Your Honor, and I apologize. Okay. You're asking me where did Google make the additional showing? No. Parties are prohibited from arguing that a plaintiff must prove embodiment of the limitations in the asserted claims, and in addition, they are also arguing that the accused devices must not be an adoption of the combined teachings of the Prior Art. That's back to your health care. They're prohibited from that. Yes. So where did Google argue that content guard must make that additional showing of Practicing the Prior Art? I don't believe they did, Your Honor. I don't take that and as being disjunctive. I don't take that and as being conjunctive. In other words, I take that and that you just read in that sentence as meaning you can't say that you don't infringe because you practice the Prior Art, and you can't say you don't infringe because you adopt wholeheartedly and 100% anticipate, in other words, the Prior Art, or because you're an obvious variant over the Prior Art, you don't infringe. Okay, but back up a moment. You object to various statements that Google made in the course of the trial, right? I objected at the end of their opening, Your Honor, and that is in chambers. There's the transcript there. We've cited it in our joint appendix, where what I said to Judge Griswold was that this sounds like what they're trying to do is urge a prosecution disclaimer type of argument. In other words, they're saying, look. Where do we find that in the record? That would be at appendix page 10704 to 707. Which volume is that? That would be volume two. What was that? What was that, site counsel? Appendix page 10704 to 10707. And it was in. It would be in volume four. Yes, Your Honor. Volume four. And that's where, after the opening, and before any of the evidence was submitted during the trial, I raised with Judge Gilstrap the problem that I saw in the opening, where they were making an association and telling the jury they could compare their accused device to this Prior Art Griswold, and see that it was more like the Griswold, quote, licensed server than the Stefik, quote, trusted system. And I said, what they were doing there was they were saying, look what Dr. Stefik said, in the background of the invention section of his patents, about this Griswold device. He said that's not what he invented. We're going to show you that that's what we're doing. And I told the district court that that was improper, and that I thought it was improper. I'm not seeing in here where you said it was improper because it was practicing the Prior Art. Well, I said it was prosecution disclaimer, Your Honor. But I mean, that's a difference. Well, the fact is, they were trying to urge that what they were doing was something that the inventor had said was in the Prior Art. Did you ever raise an objection in the course of the trial where you characterized what they were doing as a practicing the Prior Art defense? I don't believe I did, Your Honor. I believe I called it a disclaimer, because I think that in this instance, it was one and the same thing. They were comparing their device to something that they said the inventor distinguished and criticized. That's on the opening page of their brief. They come in and they say, the inventor, Dr. Stefik, distinguished and criticized the licensed server approach. But as a matter of plain construction, there's nothing wrong with that. If the Prior Art is criticized, we have cases saying, well, in interpreting the claims, you can take that into account. There's nothing wrong with that. It may, in a particular case, be an argument that's successful or unsuccessful, but it's not improper. But where it needs to be brought up, Your Honor, is at the markman phase, not in front of the jury. OK. And so it wasn't brought up at the markman phase. There was never an argument raised. It's a different argument than practicing the Prior Art. What I said, Your Honor, was that what they were doing was improper. They were presenting an argument to the jury that said, look, what we're doing is what the inventor said his invention was different than. Now, one could call, and we're saying, and then they said, and we're doing what the inventor said he didn't like and didn't invent. Now, we could sit here and say that whether or not I should have called that a practicing the Prior Art or the prosecution disclaimer. But the substance of what was going on there was that they were trying to urge that the jury compare their device with this Griswold Prior Art because they said the Griswold Prior Art was something the inventor distinguished in the background of the invention section. Now, if that were a limitation on the scope of the claims, that was something that should have been raised at the markman phase. They should have gone into the district court and said, the scope of these claims, even if they're literal language, might otherwise grab this alleged licensure. Your argument here has some sense to it, but that's, I don't see that argument in your objection, and it's hard for me to see that the judge would discern the legal argument you're making now based on what was said. Respectfully, Judge Reyna, I think I told Judge Gilstrap exactly that, that what they were trying to do was to say that their accused device was like the Griswold licensed server, and therefore, it didn't infringe. And I said, what that was, was an attempt to carve out from the scope, the literal language of the claims, something that was allegedly distinguished, and that was what I meant by prosecution disclaimer. I thought that what, and I think I explained that to Judge Gilstrap quite clearly. I mean, there's three pages of me explaining what it was they were trying to do, and that is that they were trying to sit there and compare their device to something that the inventor had described in his background section. And then they came in, and even with their expert's testimony, their expert put slides up on the overhead that showed this is Griswold, this is the accused Google system, this is a figure from the Stefik patent. Let me show you which one the accused system is closer to. He said, look, it's closer to this Griswold system, the one that Dr. Stefik said he didn't invent. And they were permitted to do that, and that's what I objected to with Judge Gilstrap. And I do believe that I made that clear, that what they were trying to do was an improper non-infringement argument by trying to convince this jury that they could shortcut the proper analysis and cutting through and comparing to the claims by arguing that all the jury needed to do was decide whether or not the accused device was closer to this alleged Griswold system. Griswold license server, or whatever they were describing as the Dr. Stefik's invention. In order to prove infringement, content guard was required to demonstrate that the accused products practiced both the repository limitation and the usage right limitation. Absolutely, Your Honor. Do you dispute that Google presented evidence at trial that the accused products practiced neither? Some evidence? They certainly tried to present evidence on both those issues, yes, Your Honor. And the jury found that? We don't know what the jury found. The jury found non-infringement. We don't know the basis for it. It was a general verdict, Your Honor. But I also would point out that we presented evidence through the testimony of our expert where it was very clear that what was being practiced in the Google system met each of the integrities. Do you agree where the district court says that, I'm quoting from the court, it properly and specifically instructed the jury that when answering the question of infringement, they were only to compare the accused products to the asserted claims and were never to compare the accused products to the prior? I don't dispute that, Your Honor. I worked on those jury instructions. I know it was in there. But honestly, Your Honor, I don't think that cures the harm here. Why not? Because the jury was told once at the very end of the case after they had heard consistent testimony about what this alleged Griswold license… That's what jury instructions do. Indeed, Your Honor, but I don't think it's fair. It's not a fair trial when the jury is permitted to hear testimony throughout the course of the trial that's inconsistent with one line in a 30-page jury instruction. Not that there's any other way to get it into the instruction, Your Honor. The time you objected, if I understand correctly, is after the opening argument, right? Indeed, and that was at that point the judge had told me, no, I'm going to let them move forward with this argument and they're going to be able to… Because they said in their opening they were comparing it… What exactly did the judge say? The judge just overruled my objection, Your Honor. Your objection is overruled. I believe it's on page 10707. 10707. But, no, did I stand up throughout the course of that trial every time they tried to compare their product to the alleged prior art product? I did not because that was the objection I raised that they did in their opening and I said they shouldn't be permitted to do that. What they were trying to argue was that there was some measure of limitation or surrender on the scope of the claims and that that was an improper argument to be presenting to the jury. And the way they did that is by comparing it to the prior art and by saying they're more like the prior art. Well, I'm not sure that objecting once and getting a ruling that you did on 10707 preserves the objection for the rest of the trial. That's the problem. And then you have the jury instruction on top of that. Well, the jury instruction didn't come in until the end of the trial, Your Honor. I understand. That's the point. I mean, respectfully, when I stand up in front of trial judges and keep making the same objection that they've already overruled, I tend to get a pretty negative response. I don't know what else to tell you.  I'm sorry, Your Honor? I could, Your Honor, and I didn't. But at that point, it was clear to me what the ruling on the objection was, and we were under a time slot. And Judge Gilstrap tried plenty of cases. He's an excellent trial judge. He moves his cases along. I've tried numerous cases in front of him. I knew what he decided, and everybody else knew what he decided. And trying to get him to repeat it didn't seem like it was necessary. I don't have a problem with there being one objection during the trial, and I understand that many judges wouldn't entertain somebody standing up and making multiple objections. But what I do see that's lacking here is a well-stated objection. You're making good arguments today, but those arguments, I mean, I have to read and reread and infer what you're saying in the record. And so when the judge, for the same reason he doesn't want continuing objections, he does want a clearly stated objection, I'm not sure I can say that the judge abused his discretion by overruling your objection, and that's a high standard. Indeed it is, Your Honor, and we realize it's a high standard. But in this instance, I do believe that what we're getting to is form over substance. I explained to the judge the improper motive and the improper way in which their non-infringement argument was being presented. Yes, did I call it prosecution disclaimer? I did, because they were comparing it to something that they said the inventor had distinguished. And then they were going to say, and I did say this in the objection, they were going to say, and we do what the inventor distinguished. Therefore, we fall within the scope of whatever was carved out of the literal language of those claims. And I did say that, Your Honor, fairly and respectfully. Wait, but you have to stop talking. Yes, Your Honor. We're on time. We'll give you two minutes to rebuttal. Yes, Your Honor, thank you. Mr. Unickel, is that how you pronounce that? Yes, thank you, Your Honor. Good morning. May it please the Court, Robert Unickel on behalf of Appellees and Cross Appellants. I do think it's a little troubling that this argument was made that the jury should look at the specification and see the prior art that was being criticized. I mean, that's really not a matter for the jury. It's a matter for claim construction. I agree, Your Honor. If that's the argument that we had made, that would have perhaps been inappropriate. But the argument that we made at trial— You made an approach argument, as I recall. I'm sorry? You said you compared approaches. Correct. In fact, I didn't compare the approaches. The patents compared the approaches. In fact, on Appendix page 371 from one of the Content Guard patents, it begins by saying, Two basic DRM schemes have been employed—secure containers and trusted systems. The patent itself, which the jury was being asked to consider, set up a difference between two approaches. We then had to explain to the jury, what is the difference between the two approaches, and why did the approach that Google took and Appellees took not use the specific claim elements that were then called out in the claims? And those elements were usage rights that are attached or treated as attached to content, physical integrity, and behavioral integrity. And the fact that these were a focus of the trial, by the way, is demonstrated by the amount of effort that is now being gone in on appeal to talking about all the proof that went in on these three particular claim elements. Our argument was never, never once, we practice the prior art, therefore there's no infringement. No, I understand that. I've read enough of the transcript to know that you didn't make that argument, but it does seem to me that you made an argument about infringement that made reference to the prior art and what it covered and what was disparaged in the specification. Am I wrong about that? Yes, Your Honor. The reason you're wrong, first of all, much of the discussion of Griswold was focused on the invalidity case, because Griswold was raised as an invalidating reference. And it was Content Guard that responded to the invalidity analysis on Griswold by saying what Griswold lacked was attached usage rights. No, no, insofar as prior art might have been raised in connection with invalidity, that's not a problem. What we're talking about is that the comparison of the prior art was raised to some extent in connection with the infringement issue, and that's correct, isn't it? Yes, to highlight the elements that were missing from ours that were not required to be in our system based on the secure container approach. Because in that, to use an analogy from sports, Your Honors, if you had an innovation that was related to playing zone defense in basketball and you were trying to distinguish and highlight the benefits of that over man-to-man defense, you would need to explain and understand what does it mean to play man-to-man defense, what does it mean to play zone defense. And when you understand that, you can understand why certain things that apply in a zone defense context don't apply in a man-to-man context. Here the patents are clear on their face that there are two different approaches that were known in the art. Google took an approach that did not require it to use usage rights, physical integrity, or behavioral integrity. And I might add, Your Honor, that in the pages that supposedly contain the objection that was made at trial, first, not only does it not mention practicing the prior art. No, it doesn't. It doesn't. That's not what we're talking about now. We're talking about making a claim construction argument to the jury. Where do I find what it is that you said in your opening statement to which they objected? I don't know that there were specific objections that they included in the opening statement that would – That's what we're talking about now. I'm not sure what statements they're referring to now, to be honest with you, Your Honor. I'll look at – this goes back to 10704. Mr. Thomas says, I have – he has an objection or a statement. He says, yesterday in the opening, it appeared that Mr. Yuckel was telling the jury that he was going to try to prove that something. So maybe it was in the opening statement. And if I may, on page 10705 of the appendix, Your Honor, where I'm actually responding to that. That is what you said that he objected to in the appendix. Not that I'm aware of, Your Honor. I am not certain, based either on his objection to this particular – that he's now pointing to in this particular group of pages or in the brief, what particular statements or comparisons he's objecting to. Obviously, the district court judge, who sat through the entire trial, heard all the evidence, was finally presented with this argument in the motion for new trial. The judge, in his opinion, denying the motion for new trial, said, based on his sitting through all the evidence, that there was no practicing the prior art defense and that we had, in fact, focused appropriately on missing elements for the infringement case. And I might point out, in this colloquy about the objection that they made on appendix page 10705, at the bottom, you'll see in my response, I focus on the fact that it's the absence of the specific claim limitation, usage rights that are attached or treated as attached, that is what is important. And the discussion of the prior art is only meant to provide context for why people of skill in the art would, in fact, not understand Google's system as employing usage rights that are attached or treated as attached to content. And that is stated multiple times on page 10705, part of the colloquy that is being cited by ContentGuard. Where I say, for example, what we are saying is, when a person of ordinary skill in the art is applying these claim limitations, and in particular, the usage rights are attached or treated as attached. You left out your cough. I'm sorry. I did leave out my cough. They would do that in the light of the specification and in the light of the understanding of the art that exists to those people. There is a difference in the art between how people understand licenses that are distributed from license servers and how they're distributed from a single server. And we're only arguing that a person of skill in the art, understanding the court's claim construction of attached or treated as attached, would not believe that that applies to a license that is sent from a license server separate from the content. What we told the district court judge and what we pursued was that this, the background discussion. It sounds a lot like arguing claim construction to a jury. We were not, Your Honor. We were not arguing claim construction. We were obligated to present to the jury evidence as to whether or not we met the court's claim construction. And the court agreed that the question of whether or not our licenses were attached or treated as attached was a question that the jury was going to have to resolve based on that construction. The question of how people of ordinary skill in the art understood the license server approach versus the trusted system approach, which their patents call out as being the two distinct approaches, was the issue for the jury that was not objected to after this colloquy, which doesn't even mention practicing the prior art. And when it was finally raised. I'm talking about practicing the prior art. That's not the issue. I apologize, Your Honor. That's the issue that I thought Content Guard had raised. They've characterized it. That's not the issue. The issue is whether you were arguing claim construction. I do not believe we were, Your Honor. We were presenting evidence to the jury, an argument to the jury, about why our system did not, in fact, use usage rights that are attached or treated as attached, based on the court's construction. Your Honor, I might add one other point, which is there was a jury instruction in the case. The jury instruction was very clear on directing the appropriate comparison that was supposed to be made, from elements of the claims to the accused instrumentality, not from the accused instrumentality to any prior art. There was no objection to that instruction. In fact, that instruction was agreed on by the parties. The judge issued that instruction. There's no suggestion in the record that somehow the jury was confused or did not apply that instruction. And, in fact, if you look at the entirety of the openings and the closings, not just cherry-picked paragraphs, what you'll see is that on non-infringement, we argued the absence of three specific claim elements based on the court's constructions expressly, usage rights, physical integrity, behavioral integrity. Your Honor, if I might, one thing I'd like to point out that's unique to our case, as opposed to the Google case, is the physical integrity limitation. We did, in fact, present undisputed evidence at trial from their expert. Their expert, Dr. Martin, conceded that he was able to access information about licenses and about the digital works themselves from the Google system. The construction of physical integrity is not being contested by content guard in this appeal. That construction prevents access to information in a repository by a non-trusted system. There was no suggestion below by content guard that information was something specific or needed. Your opposing counsel conceded that you presented evidence and that it went to the jury, so there you go. Fair enough, Your Honor. I guess the only point I would make in addition to that concession is there was no substantial evidence to support a finding of infringement of that element. Not only did we present evidence that established non-infringement, including the admissions from their expert, but, in fact, there was no evidence that was presented that would suggest infringement of that element, because even their own experts admitted they were able to access information about the licenses, about the digital works from the Google system. And that testimony is on page 38 of the red brief, Your Honors. I suppose I should mention, just in case the Court has any interest in it, that we do have a Section 101 argument, among others, in our cross-appeal, and I would just want to point out that in the briefing on this issue, content guard does not actually disagree that the library loan transaction is the pre-Internet analog for what they're claiming in their claims. What they say, and what they said at the district court level, is, but we have three integrities that have to be applied to a computer in order to make it a repository. But if you look at the constructions that nobody's challenging of those three integrities, they are really nothing more than functional goals. They're not specific as to either hardware or software. So physical integrity prevents access to information. We don't need to reach these issues if we agree with you on infringement? That's correct, Your Honor. With that in mind, if there are no other questions, I'll see the rest of my time for rebuttal. Okay, thank you, Mr. Unickel. Mr. Connell, what's going on here? The statements in the opening that Mr. Unickel made are at appendix page 10582. He says, on your screens you will see a paragraph straight out of the patent that criticizes Mr. Griswold's license server system. And that's at lines 21 through 24 at 10582. This is the opening statement? This is the opening statement. And then again at 10586, at lines 5 through 9, Mr. Unickel told the jury in his opening, this case will come down to whether you believe Google is using the license server approach, the only license server approach he referenced was that of the Prior Art Griswold system, or whether you believe they're using Dr. Stefik's trusted system approach, plain and simple. That's what I was objecting to, Your Honor. That, to me, looked like it was going straight to what I characterize as prosecution disclaimer. But I do believe that it is an analogous thing to a practicing the Prior Art, because what he was trying to do was say, we practice what was disclaimed by Dr. Griswold. And what was disclaimed by Dr. Griswold was, I'm sorry, the Dr. Stefik in the Griswold system was in the Prior Art. That said, Your Honor, I'll also point out that Google doesn't really challenge in their briefs the kinds of arguments they made to the jury. What they say is, we didn't say we practiced the Prior Art. We said we were analogous to the Prior Art. And that's on page 45 of their brief. So they were trying to excuse this. We didn't say we were the same as the Prior Art, so we don't infringe. We said we were analogous to the Prior Art, so we don't infringe. And that, Your Honor, is a distinction without a difference. The court responded to your objection. This is at 10706, line 15. He didn't just overrule you. He actually gave you an approach you can use to address the problem. And he says that Dr. Stefik is your witness. You put him up there. It's fair to question him about what the patents he wrote. But he also, well, he overruled my objection, Your Honor. He overruled it, but then he also said if there's a problem later on, he offered you a way. Oh, and we did have Dr. Stefik explain that the license server that he was describing was actually different than his invention because it required a constant communication link back to the license server. Each of the claims in this suit require that the usage rights be enforced on the user's computer. And so that the license, the usage rights have to be enforceable on the user's computer. That's what the claims require. They don't require any particular way for the computer to find the usage rights that are applicable to a particular movie. But certainly there has to be a way for the system to enforce those rights. But that's where the district court, we think, went afield. And if I might just – I think we're out of time, Mr. Townsend. If I might just – No, no. Yes, Your Honor. Thank you very much. Thank both counsel. The case is submitted. Thank you, Your Honor.